UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CALIFORNIA PARENTS FOR THE
EQUALIZATION OF EDUCATIONAL
MATERIALS,

       Plaintiff,

    v.                  NO. CIV. S-06-532 FCD KJM

THE CALIFORNIA DEPARTMENT OF
EDUCATION, et al.,

       Defendants.

_____/

----oo0oo----

    This matter is before the court on defendants California
State Department of Education ("CDE"), California State Board of
Education ("SBE"), Glee Johnson, Kenneth Noonan, Alan Bersin,
Ruth Bloom, Yvonne Chan, Donald G. Fisher, Ruth E. Green, Joe
Nunez, Bonnie Reiss, and Tom Adams' (collectively, "defendants")
motion to dismiss plaintiff California Parents for the

1  Equalization of Educational Materials' ("plaintiff" or "CAPEEM")

2  first amended complaint pursuant to Rules 12(b)(1) and 12(b)(6)

3  of the Federal Rules of Civil Procedure.[1]

**BACKGROUND**[2]

5  _____Every six years, the SBE and CDE adopt and approve textbooks

6  and instructional materials for use in California public schools.

7  (FAC ¶ 4.1.)  The Curriculum Development and Supplemental

8  Materials Commission (the "Curriculum Commission"), an advisory

9  body to the SBE, makes recommendations to SBE for specific

10 revisions to the textbooks.  (FAC ¶ 4.2.)  This process is open

11 to public comment from interested parties such as religious

12 groups.  (FAC ¶ 4.2.)

13     In 2005, CDE began the public review process for History-

14 Social Sciences textbooks.  It collected and received submissions

15 for changes in September 2005.  (FAC ¶ 4.4.)  Along with other

16 interested groups, members of CAPEEM, belonging to various Hindu

17 groups, suggested edits.  (FAC ¶ 4.6.)  Among these edits, the

18 Hindu groups' principal concerns related to the way in which

19 Hindus and Hinduism were treated in the texts.  These concerns

20 included the textbooks' inclusion of (1) the origins of Hinduism,

21 or the "Aryan Invasion Theory;" (2) the disproportionately

22 inferior status of women as compared to other cultures; (3) the

23 misconception of "untouchability" as a religious rather than a

24 social construction; (4) the inaccurate description of Hindu

25 concepts of divinity; and (5) derogatory comments about Hinduism

26 _____

27   [1]  All further references to a "Rule" are to the Federal
     Rules of Civil Procedure.

28   [2]  The alleged facts below are drawn from plaintiff's
     complaint and, for purposes of this motion, are taken as true.

1  and Hindu tenets.  (FAC ¶¶ 4.12-4.39.)

2     The CDE established an ad-hoc committee to review the edits

3  and corrections proposed by the Hindu groups.  (FAC ¶ 4.6.)  The

4  CDE also retained Dr. Shiva Bajpai, Professor Emeritus in History

5  at Cal State Northridge, as a Content Review Panel Expert

6  ("CRPE").  (FAC ¶ 4.7.)  The CDE required the following of Dr.

7  Bajpai: (1) he could not have published with any of the textbook

8  publishers for the prior three years; (2) he had to be an expert

9  of ancient Indian history and Hinduism; and (3) he could not be

10 affiliated in any way with the Hindu groups submitting the

11 comments.  (FAC ¶ 4.8.)

12    In October 2005, the ad-hoc committee and Dr. Bajpai

13 reviewed and approved the majority of the Hindu groups' proposed

14 edits.  (FAC ¶ 4.9.)  On October 31, 2005, the ad-hoc committee

15 and Dr. Bajpai submitted their recommendations to the Curriculum

16 Commission, which accepted the recommendations in full (the

17 "Initial Revisions").  (FAC ¶¶ 4.9-4.10.)  During this time,

18 other ad-hoc committees and subcommittees submitted

19 recommendations regarding separate issues raised by other

20 stakeholders such as Muslim and Jewish groups.  (FAC ¶ 4.9.)

21    On November 8, 2005, Professor Michael Witzel, Professor of

22 Sanskrit at Harvard University, sent the SBE a letter co-signed

23 by other prominent academics in Indian history (the "Witzel

24 Letter").  The Witzel Letter disagreed with many of the Initial

25 Revisions, and it characterized the proposed changes as motivated

26 by nationalist and religious sentiments.  (FAC ¶ 4.41.)  The

27 Witzel Letter, however, did not include any specific reference to

28 the Initial Revisions.  Furthermore, the proposed revisions had

1  not yet been made available to the general public at the time
2  Professor Witzel sent the letter, and neither he nor any of the
3  letter's signatories had participated in the public comment
4  period.  (FAC ¶¶ 4.43-4.45.)

5       On November 9, 2005, defendant Ruth Green, President of the
6  SBE, read the Witzel Letter at a SBE meeting and subsequently
7  delayed approval of the Curriculum Commission's proposed
8  revisions regarding Hinduism.  (FAC ¶ 4.47.)  During this
9  meeting, the Curriculum Commission also recommended revisions
10  supported by other religious groups representing Christians, Jews
11  and Muslims.  (FAC ¶ 4.49.)  At a later meeting, the SBE created
12  a second panel of experts consisting of Professor Witzel,
13  Professor Wolpert of UCLA, and Professor Heitzman of UC Davis.
14  (FAC ¶ 4.50.)  Plaintiff alleges this second panel did not meet
15  the standards required of Dr. Bajpai as the first CRPE.  (FAC ¶
16  4.52.)

17       On November 22, 2005, the CDE released recommendations
18  proposed by the second panel.  The interested Hindu groups were
19  not allowed an opportunity to comment on these revisions.  (FAC ¶
20  4.55.)  On December 2, 2005, the Curriculum Commission met to
21  discuss the new revisions and submitted its recommendations to
22  the SBE.  (FAC ¶¶ 4.56-4.59.)  On January 6, 2006, the SBE
23  conducted a closed-door meeting with Professors Bajpai and Witzel
24  regarding the final proposed revisions.  (FAC ¶¶ 4.62-4.63.)  On
25  January 12, 2006, the SBE created a five member subcommittee to
26  consider the issue.  (FAC ¶ 4.63.)  On March 8-10, 2006, the SBE
27  held a public meeting and adopted the final edits to the
28  textbooks (the "Final Revisions").  (FAC ¶¶ 4.65-4.66.)  The

4

Final Revisions adopted some of the Hindu groups' suggested edits, but they did not address the groups' primary concerns described above.  (FAC ¶ 4.69.)

Plaintiff is a non-profit organization whose purpose is to promote an accurate portrayal of the Hindu religion in California public schools.  (Defs.' Req. for Judicial Notice ("RJN") at Ex. C, filed June 12, 2006.)  As a result of defendants' actions, plaintiff alleges damages to its members who include public participants in the textbook revision process as well as Hindu and Indian parents with students in California public schools. (FAC page 2.)  Plaintiff alleges that educational materials that follow the Final Revisions will embarrass and degrade its members' children and will result in an inferior education for Hindu and Indian students.  (FAC ¶ 4.72-4.75.)

Plaintiff filed its first amended complaint on May 4, 2006. Plaintiff included claims against all defendants for violation, under the United States Constitution, of the Equal Protection Clause of the Fourteenth Amendment, and the Establishment, the Free Speech and the Free Association Clauses of the First Amendment.  Plaintiff also included a claim against the individual defendants[3] for violation of 42 U.S.C. § 1983. Plaintiff's complaint seeks injunctive relief, nominal damages and attorney's fees.

/////

---

[3]   The "individual defendants" include all named defendants except the SBE and CDE.  Defendant Tom Adams oversees the textbook revision process for CDE.  Defendant Glee Johnson is the President of the SBE, defendant Kenneth Noonan is the Vice President of the SBE and the remaining individual defendants are board members of the SBE.  (FAC ¶¶ 2.3, 2.5.)

1                                    **STANDARD**

2          On a motion to dismiss, the allegations of the complaint

3  must be accepted as true.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322

4  (1972).  The court is bound to give plaintiff the benefit of

5  every reasonable inference to be drawn from the "well-pleaded"

6  allegations of the complaint.  <u>Retail Clerks Int'l Ass'n v.</u>

7  <u>Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

8  need not necessarily plead a particular fact if that fact is a

9  reasonable inference from facts properly alleged.  <u>See</u> <u>id.</u>

10         Given that the complaint is construed favorably to the

11 pleader, the court may not dismiss the complaint for failure to

12 state a claim unless it appears beyond a doubt that the plaintiff

13 can prove no set of facts in support of the claim which would

14 entitle him or her to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45

15 (1957); <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir.

16 1986).  Nevertheless, it is inappropriate to assume that

17 plaintiff "can prove facts which it has not alleged or that the

18 defendants have violated the . . . laws in ways that have not

19 been alleged."  <u>Associated Gen. Contractors of Cal., Inc. v.</u>

20 <u>California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

21 Moreover, the court "need not assume the truth of legal

22 conclusions cast in the form of factual allegations."  <u>United</u>

23 <u>States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th

24 Cir. 1986).

25         In ruling upon a motion to dismiss, the court may consider

26 only the complaint, any exhibits thereto, and matters which may

27 be judicially noticed pursuant to Federal Rule of Evidence 201.

28 <u>See</u> <u>Mir v. Little Co. Of Mary Hospital</u>, 844 F.2d 646, 649 (9th

                                         6

1 Cir. 1988); <u>Isuzu Motors Ltd. v. Consumers Union of United</u>

2 <u>States, Inc.</u>, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

3                              **ANALYSIS**

4 **I.   Constitutional Claims**

5        Defendants argue that plaintiff's complaint improperly

6 alleges claims directly under the Constitution.  Defendants

7 contend the Constitution does not provide a direct claim for

8 relief, and thus, they request dismissal of plaintiff's claims.

9 Plaintiff's complaint contains four claims for relief.  The first

10 three claims allege that all defendants violated the

11 Constitution.  (FAC ¶¶ 5.1-5.11 (first claim for relief for

12 "violation of the Equal protection Clause of the Fourteenth

13 Amendment"); FAC ¶¶ 6.1-6.9 (second claim for relief for

14 "violation of the Establishment Clause of the First Amendment");

15 FAC ¶¶ 7.1-7.9 (third claim for relief for "violation of the Free

16 Speech and Free Association Clauses of the First Amendment").

17 Plaintiff's fourth claim for relief is asserted against the

18 individual defendants under 42 U.S.C. § 1983 for violations of

19 the First and Fourteenth Amendments.  (FAC ¶¶ 8.1-8.3.)

20        Defendants are correct that a litigant does not have a claim

21 for relief directly under the United States Constitution.  <u>Azul-</u>

22 <u>Pacifico, Inc. v. City of Los Angeles</u>, 973 F.2d 704, 705 (9th

23 Cir. 1992).  However, under the liberal notice-pleading standard

24 of the Federal Rules of Civil Procedure, a party need only plead

25 the facts underlying a § 1983 claim and not the statute itself.

26 <u>McCalden v. California Library Ass'n</u>, 955 F.2d 1214, 1223 (9th

27 Cir. 1992) (stating, "[Plaintiff] is not required to state the

28 statutory or constitutional basis for his claim, only the facts

7

1 underlying it").

2   To state a claim for relief under § 1983, a plaintiff must
3 allege that (1) a person deprived him of a federal right, and (2)
4 that the person depriving him of the right acted under color of
5 state law.  Cabrera v. Martin, 973 F.2d 735, 745 (9th Cir. 1992).
6 Liability under § 1983 explicitly includes deprivation of the
7 "rights, privileges or immunities secured by the Constitution."
8 42 U.S.C. § 1983.  Here, plaintiff alleges that defendants
9 violated its rights and its members' rights under the Equal
10 Protection Clause of the Fourteenth Amendment and the
11 Establishment, Free Speech and Free Association Clauses of the
12 First Amendment.  (FAC ¶¶ 5.1-7.9, 8.3.)  Plaintiff also alleges
13 that defendants acted under color of state law throughout the
14 revision process.  (FAC ¶ 8.2.)  Therefore, by pleading facts
15 alleging violations of constitutional rights and alleging
16 defendants acted to violate those rights under color of state
17 law, plaintiff has alleged facts in support of a § 1983 claim.
18 Plaintiff's failure to cite directly to § 1983 as the vehicle for
19 asserting its constitutional claims is not fatal because the
20 underlying facts supporting such a claim are alleged.  McCalden,
21 955 F.2d at 1223.  Furthermore, the court notes that while
22 § 1983 is not mentioned directly in the first, second or third
23 claims for relief, it is mentioned in the complaint.  Indeed, it
24 is referenced as the basis for jurisdiction in this action, and
25 the fourth claim for relief is for violation of § 1983 by the
26 individual defendants.  Thus, plaintiff's reference to § 1983, in
27 some respects in the complaint, provided adequate notice to
28 defendants of the grounds upon which plaintiff seeks relief.

**II.  <u>Standing</u>**

Defendants assert that plaintiff lacks standing to bring a claim for violation of § 1983.  Specifically, defendants argue that plaintiff fails to allege facts sufficient to establish associational standing.

Establishing standing is an essential part of the case or controversy requirement of Article III of the United States Constitution.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  An association has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests the association seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  <u>Hunt v. Washington State Apple Adver. Comm'n</u>, 432 U.S. 333, 343 (1977).

**A.   Individual Standing of CAPEEM Members**

Under the first prong of the <u>Hunt</u> test, plaintiff must allege facts supporting its members standing in their own right. <u>Id.</u>  To allege individual standing, a plaintiff must state facts demonstrating: (1) a concrete and particularized injury in fact that is actual or imminent; (2) a causal connection between the injury and the defendants' conduct or omissions; and (3) the likelihood that the injury will be redressed by a favorable decision.  <u>Lujan</u>, 504 U.S. at 560.  On a motion to dismiss, general allegations of injury resulting from the defendants' conduct suffice.  <u>Id.</u> at 561.

/////

/////

9

1           **1.   Injury in Fact**

2     Plaintiff alleges injury to (1) its members who are parents

3 of children who currently are, or will be, attending California

4 public schools in grades first through sixth, and (2) members of

5 CAPEEM who engaged in the textbook adoption process.  With

6 respect to the parent members, plaintiff alleges they will be

7 injured by their children suffering embarrassment, degradation

8 and an inferior education.  (FAC ¶ 4.72.)  With respect to the

9 CAPEEM members who participated in the revision process,

10 plaintiff alleges they were treated disparately in the process

11 because of their religious, political and national affiliation.

12 (FAC ¶ 5.4.)

13     First, regarding the parent CAPEEM members, the Ninth

14 Circuit has specifically recognized a parent's standing to sue

15 for constitutional violations affecting his child's education.

16 <u>Johnson v. Stuart</u>, 702 F.2d 193, 197 (9th Cir. 1983) (finding

17 parents had standing to bring suit challenging the

18 constitutionality of Oregon's textbook selection process); <u>Grove</u>

19 <u>v. Mead School Dist.</u>, 753 F.2d 1528, 1532 (9th Cir. 1985)

20 (finding the plaintiff parent had standing to bring a suit

21 asserting a religious objection to her child's high school

22 literature assignment because a parent has the right to direct

23 the religious training of her child).

24     In the instant case, defendants contend that plaintiff fails

25 to sufficiently allege that its members, or its members'

26 children, will use the sixth grade History-Social Science

27 textbooks in question.  Specifically, defendants argue that

28 plaintiffs' allegation that its members are "parents who have

children attending public schools in the State of California and
who will be attending public schools in the State of California
in the first through sixth grades (FAC at 2)," is inadequate to
allege that CAPEEM's members or their children *will* use the
subject textbooks.

Defendants' contention parses this allegation too narrowly.
Indeed, for purposes of a motion to dismiss, the court must make,
in plaintiff's favor, every reasonable inference that can be
drawn from the allegations in the complaint.  <u>Retail Clerks Int'l</u>
<u>Ass'n</u>, 373 U.S. at 753 n.6.  Here, the court reads plaintiff's
allegation that some of its members have children who will be
attending public schools in the first through sixth grades, to
include the assertion that some members' children will be in the
sixth grade, during the next six years, and will use the subject
textbooks before the next revision process occurs.

As to these students, plaintiff alleges injury in the form
of embarrassment, degradation and an inferior education.  (FAC ¶
4.72.)  The students' parents have standing, as set forth above,
to press the alleged constitutional violations which are the
claimed cause of the injuries.  <u>Johnson</u>, 702 F.2d at 197.
Therefore, plaintiff has sufficiently alleged that these parent
members of CAPEEM and their children would suffer an injury in
fact that is concrete, particularized and imminent.

Plaintiff also alleges injury in fact to its members who
participated in the textbook revision process.  Plaintiff asserts
that these members were treated disparately in the revision
process because of their religious, political and national
affiliations.  Plaintiff argues that the alleged denial of equal

1  treatment because of religion is itself an injury in fact
2  sufficient to establish standing for an Equal Protection Claim.

3       Plaintiff is correct that discriminatory treatment, without
4  the additional requirement of demonstrating actual injury, may be
5  sufficient to establish standing when a defendant creates a
6  barrier to a potential benefit.  Northeastern Fla. Chapter of
7  Associated Gen. Contractors of Am. v. City of Jacksonville, 508
8  U.S. 656, 666 (1993) (allowing standing for a group of
9  contractors allegedly denied equal footing in a bidding process).
10 However, a party that does not assert a direct injury must still
11 identify a lost benefit or opportunity.  Day v. Sebelius, 376 F.
12 Supp. 2d 1022, 1038 (D. Kan. 2005) (noting the limits of
13 Northeastern's application to standing issues in Equal Protection
14 claims); See Scott v. Pasadena Unified School Dist., 306 F.3d
15 646, 654-62 (9th Cir. 2002) (finding no standing for an Equal
16 Protection claim where a particularized injury to plaintiff did
17 not exist).  In the instant action, plaintiff's complaint wholly
18 fails to allege a potential benefit that was denied to those
19 members whose alleged injury occurred solely through their
20 participation in the textbook revision process.[4]  Nevertheless,
21 the court grants plaintiff leave to amend the complaint to
22 include allegations, if possible, that its members who
23 participated in the process suffered actual injury or were denied
24 the opportunity to equally compete for a benefit.

25
26
_____

27      [4]   By relying on Northeastern, plaintiff was required to
   demonstrate a lost benefit or opportunity.  Had plaintiff alleged
28 facts to demonstrate an actual injury, the demonstration of a
   lost benefit or opportunity would not have been necessary.

1

## 2.   Causal Connection[5]

2     Defendants do not contend that plaintiff has inadequately

3 alleged the causal connection between defendants' alleged actions

4 and the alleged injury to the parent members of plaintiff.

5 Plaintiff alleges that the content of the textbooks would result

6 in injury to the students and that defendants are responsible for

7 approving and adopting the textbook content.  (FAC ¶ 4.1.)

8 Therefore, plaintiff has sufficiently alleged a causal connection

9 between defendants' actions and the alleged injury of its

10 members.

11

## 3.   Likelihood of Redressability

12     Defendants also do not contend that this element is

13 inadequately pled.  With respect to the CAPEEM parents, plaintiff

14 alleges that the basis of the injury is the textbooks' content.

15 In that regard, plaintiff requests injunctive relief prohibiting

16 defendants' use of the offensive material.  The injunctive relief

17 would prevent the use of the textbooks in schools, thereby

18 eliminating the embarrassment, degradation and inferior education

19 plaintiff alleges the students will otherwise suffer.  Because

20 the requested relief is prospective and seeks to directly

21 prohibit the offensive material, plaintiff has alleged that a

22 favorable outcome will likely redress plaintiff's alleged

23 injuries.  Thus, plaintiff has adequately alleged this final

24 element of individual standing.

25     In sum, plaintiff has adequately alleged each of the three

26 required elements to state the individual standing of at least

27

28         [5]   As the court finds that the "participant" CAPEEM
members have not alleged an injury in fact, it does not discuss
the remaining standing elements as they pertain to them.

13

1  some of its members.   Therefore, plaintiff's complaint meets the

2  first prong of the Hunt test for associational standing.

3       **B.   Germaneness of Plaintiff's Organizational Purpose**

4       Under the second prong of the Hunt test, plaintiff must

5  allege that the relevant interests in the instant case are

6  germane to the organization's purpose.   Hunt, 432 U.S. at 343.

7  Defendants argue that plaintiff makes no reference to its purpose

8  in the complaint; therefore, the court cannot determine whether

9  its purpose is germane to the instant case.

10      Defendants correctly argue that an organization must

11 identify its purpose and its membership to meet federal standing

12 requirements.   Individuals for Responsible Gov't, Inc. v. Washoe

13 County, 110 F.3d 699, 702 (9th Cir. 1997).   However, the instant

14 action is distinguishable from Washoe County.   There, the

15 plaintiff organization did not identify its organizational

16 purpose or the make-up of its membership.   Id.   Here, although

17 plaintiff's *complaint* does not state CAPEEM's organizational

18 purpose, its purpose is stated in CAPEEM's articles of

19 incorporation. (RJN at Ex. C (stating plaintiff's purpose as "to

20 promote an accurate portrayal of the Hindu religion in the public

21 education system of the State of California")).   The court may

22 consider said articles of incorporation as they are properly

23 judicially noticed.   See Mir v. Little Co. Of Mary Hospital, 844

24 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers

25 Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D.

26 Cal. 1998).[6]

27 _____

28      [6]   Indeed, *defendants* requested that the court take
   judicial notice of the articles of incorporation, among other
                                              (continued...)

14

Furthermore, as stated above, plaintiff alleges that its membership includes parents of children who will be attending public schools in California.  The primary basis of the instant case is plaintiff's overall allegation that defendants approved textbooks for use in California public schools that inaccurately portray the Hindu religion.  Plaintiff's organizational purpose is clearly germane, and in fact appears tailor-made, for the instant action.  Therefore, plaintiff has adequately alleged facts that meet the second prong of the <u>Hunt</u> test.

**C.    Requirement of Individual Participation in Litigation**

Defendant argues that plaintiff fails to satisfy the third prong of the <u>Hunt</u> test.  When considering associational standing, the individual participation of plaintiff's members must not be necessary for determination of either the claim asserted or relief requested.  <u>Hunt</u>, 432 U.S. at 343; <u>See, e.g.</u>, <u>United Union of Roofers v. Insurance Corp. of Am.</u>, 919 F.2d 1398, 1400 (9th Cir. 1990) (denying standing when individual members of organization would be necessary to determine money damages); <u>Committee for Reasonable Regulation of Lake Tahoe v. Tahoe Reg'l Planning Agency</u>, 365 F. Supp. 2d 1146, 1163 (D. Nev. 2005) (denying standing for equitable relief claim where the details of each parcel of land were required to perform the fact-specific balancing test in a takings claim).

Defendants assert that plaintiff's individual members must participate in the litigation to establish proof of injury. Therefore, defendants argue, the complaint fails the third prong

---

[6](...continued)
documents, and plaintiff filed a notice of non-opposition to the request.

1  of the Hunt test.  However, this conclusion misinterprets the

2  Hunt test.  The court in Hunt found that standing was proper

3  because neither the constitutional claim nor the relief requested

4  required *individualized* proof.  432 U.S. at 344.  There is no

5  prohibition against generalized evidence from members showing

6  injury.  Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d

7  584, 602-03 (7th Cir. 1993) (finding the plaintiff organization

8  met the third prong of Hunt even though some generalized evidence

9  from individual members was necessary); See also Associated Gen.

10 Contractors of California, Inc. v. Coalition for Econ. Equity,

11 950 F.2d 1401, 1408 (9th Cir. 1991).  Here, plaintiff claims that

12 the defendants implemented the textbook revision process in a

13 manner that violated § 1983.  The particular injuries that may be

14 inflicted on each student are not relevant to the determination

15 of whether the *process* was implemented using discriminatory

16 means.  Cf. Committee for Reasonable Regulation of Lake Tahoe,

17 365 F. Supp. 2d at 1163 (rejecting associational standing because

18 determination of the takings claim required a balancing test that

19 was case by case specific).  As such, it is not necessary for the

20 affected students or their parents to present individualized

21 evidence.

22      Furthermore, the plaintiff's requested relief is injunctive.

23 Plaintiff does not seek damages that would require any

24 individualized determination of the extent of injury to the

25 students.  Therefore, individual member participation is not

26 required, and the third prong of the Hunt test is satisfied.

27 See, e.g., Gay-Straight Alliance Network v. Visalia Unified Sch.

28 Dist., 262 F. Supp. 2d 1088, 1105 (E.D. Cal. 2001) (allowing

1  standing for organization of gay students seeking injunctive

2  relief to stop constitutional violations based on school

3  district's past and ongoing discriminatory behavior).

4      As a final argument on standing, defendants ask this court

5  to apply Second Circuit authority and find that associational

6  standing is not permissible in a § 1983 case.  Defendants base

7  their argument on Aguayo v. Richardson, 473 F.2d 1090, 1099 (2nd

8  Cir. 1973) (declining to extend organizational standing for

9  claims under § 1983) and League of Women Voters v. Nassau County

10 Bd. of Supervisors, 737 F.2d 155, 160 (2nd Cir. 1984) (noting a

11 circuit restriction on organizational standing for claims under §

12 1983).  However, defendants ignore the fact that the Ninth

13 Circuit does not recognize this restriction.  California First

14 Amendment Coal. v. Calderon, 150 F.3d 976, 980 (9th Cir. 1998)

15 (allowing standing for organization of journalists bringing suit

16 under § 1983); Associated Gen. Contractors of California, Inc.,

17 950 F.2d at 1408 (9th Cir. 1991) (finding standing for

18 organization of contractors bringing civil rights claims under §§

19 1981 and 1983); See also National Ass'n for Advancement of

20 Psychoanalysis v. California Bd. of Psychology, 228 F.3d 1043,

21 1049 n.4 (9th Cir. 2000) (dismissing the case on other grounds,

22 but noting organization of psychologists had standing to seek

23 injunctive and declaratory relief under § 1983).

24     Clearly, this court is bound to follow Ninth Circuit

25 precedent.  Consequently, there is no blanket prohibition against

26 an organization bringing a civil rights claim under § 1983.  For

27 the reasons set forth above, plaintiff has sufficiently alleged

28

17

1  facts that support associational standing.[7]

2  **III. Equal Protection Claim**

3      Defendants assert that plaintiff fails to state a claim

4  under the Equal Protection Clause of the Fourteenth Amendment.

5  Defendants argue that plaintiff does not allege facts supporting

6  a claim of unequal treatment in violation of the Constitution.

7      The Equal Protection Clause of the Fourteenth Amendment

8  requires all similarly situated persons to be treated alike.

9  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432,

10  439 (1985).  In an Equal Protection analysis, the plaintiff must

11  first identify the classification it belongs to, then it must

12  show a similarly situated class against which plaintiff can be

13  compared.  Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th

14  Cir. 1995).  In identifying a classification, the plaintiff must

15  show that the law is applied in a discriminatory fashion to

16  members of its class.  Id. (citing, Christy v. Hodel, 857 F.2d

17  1324, 1331 (9th Cir. 1988)).  On a motion to dismiss, a plaintiff

18  need only make a broad allegation regarding the class it belongs

19  to and the different treatment of others who are "similarly

20  situated".  Williams v. Vidmar, 367 F. Supp. 2d 1265, 1271 (N.D.

21  Cal. 2005).

22      Plaintiff's complaint includes allegations that defendants

23  treated Hindu groups differently during the textbook review

24  process.  (FAC ¶ 5.11.)  The allegations sufficiently identify

25  religion as the classification defendants allegedly used to apply

26

27      [7]    Plaintiff also asserts direct standing as an
   organization.  Because plaintiff has sufficiently established
28  associational standing, the court does not consider whether
   CAPEEM, as an organization, has direct standing.

1  the law in a discriminatory fashion.  Plaintiff also specifically

2  alleges defendants applied a less restrictive standard to Muslim,

3  Christian and Jewish groups involved in the review process.  For

4  example, plaintiff alleges that only Hindu groups were subjected

5  to, *inter alia*, repeated scrutiny of proposed edits; secretive

6  processes in making final decisions; and, hostile academic

7  advisors.  (FAC ¶ 5.11.)  These allegations, if true, could

8  establish grounds for relief under an Equal Protection claim.

9      Defendants argue further that plaintiff's Equal Protection

10 claim should be dismissed because the textbook adoption process

11 is a matter of state law.  Defendants rely on the Supreme Court's

12 decision in Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S.

13 89, 106 (1984), holding that a federal court cannot grant relief

14 against state officials on the basis of state law.  However, this

15 argument mischaracterizes plaintiff's claim.  Plaintiff alleges

16 defendants violated *federal* constitutional law by discriminating

17 in the *application* of a state law.  Plaintiff is not asking the

18 court to apply any California law against defendants.  Therefore,

19 the Court's decision in Pennhurst does not prevent plaintiff from

20 bringing a § 1983 claim against defendants.

21 **IV.   Eleventh Amendment Immunity**

22     Defendants argue the Eleventh Amendment prohibits plaintiff

23 from bringing a § 1983 claim against the State.  As such,

24 defendants SBE and CDE, as agencies of the State, must be

25 dismissed.  Defendants also contend that state officials cannot

26 be sued for damages or other retrospective relief under § 1983.

27     The Eleventh Amendment bars suit against a State for alleged

28 deprivations of civil liberties unless the State waives its

1  immunity or Congress overrides it.   <u>Will v. Michigan Dept. of</u>

2  <u>State Police</u>, 491 U.S. 58, 66 (1989).   This immunity extends to

3  virtually all state agencies, as they are arms of the state.

4  <u>Durning v. Citibank</u>, 950 F.2d 1419, 1422 (9th Cir. 1991).

5  However, a suit seeking prospective injunctive relief against a

6  state official in his or her official capacity is allowable.

7  <u>Will</u>, 491 U.S. at 71 n.10 (citing <u>Ex Parte Young</u>, 209 U.S. 123,

8  159-60 (1908)); <u>Doe v. Lawrence Livermore Nat'l Lab.</u>, 131 F.3d

9  836, 839 (9th Cir. 1997).

10      In the instant action, plaintiff seeks prospective

11  injunctive relief against defendants.   Defendants SBE and CDE are

12  both agencies of the State of California.   As such, the Eleventh

13  Amendment shields them from suit.   <u>Emma C. v. Easton</u>, 985 F.

14  Supp. 940, 947 (N.D. Cal. 1997); <u>Los Angeles Branch NAACP v. Los</u>

15  <u>Angeles Unified Sch. Dist.</u>, 714 F.2d 946, 950 (9th Cir. 1983).

16  However, plaintiff also brings suit against individual

17  defendants, who are members of SBE, and defendant Adams, who is

18  the director of the Curriculum Committee.   A suit against these

19  individuals acting in their official capacities is not barred by

20  the Eleventh Amendment where, as it is here, the requested relief

21  is prospective.   <u>See</u> <u>Ex Parte Young</u>, 209 U.S. 123 (1908).

22      Nonetheless, defendants argue that plaintiff's suit against

23  the individual defendants is barred because the complaint seeks

24  to redress a past injury.   <u>Papasan v. Allain</u>, 478 U.S. 265, 277-

25  78 (1986) (limiting the application of <u>Young</u> to ongoing

26  violations of federal law as opposed to violations that occurred

27  at one time or over a period of time in the past).   However, the

28  Ninth Circuit has recognized that actions rooted in the past are

20

1  not barred by the Eleventh Amendment if the injunctive or

2  declaratory relief sought would prevent future ongoing

3  illegality.   Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).

4  Plaintiff's complaint seeks to redress an allegedly

5  unconstitutional application of the textbook revision process.

6  If left unaddressed, the alleged violation would continue six

7  years until the next revision process.   Therefore, plaintiff's

8  reliance on past events in the complaint does not bar it from

9  pursuing redress.

10      Defendants finally contend that plaintiff does not clearly

11  allege in the complaint whether the individual defendants are

12  named in their official or personal capacities, or both.   The

13  court addresses this issue in more detail below.   For purposes of

14  the application of the Eleventh Amendment to any personal

15  capacity claims against the individual defendants, the court

16  defers ruling on that issue pending clarification by plaintiff,

17  via an amended complaint, of the allegations against the

18  individual defendants.

19      In sum, to the extent plaintiff seeks only prospective

20  injunctive relief, the Eleventh Amendment does not bar

21  plaintiff's suit against the individual defendants in their

22  official capacities.   However, the Eleventh Amendment does bar

23  plaintiff's claims against the state agencies, SBE and CDE.

24  Therefore, defendants SBE and CDE's motion to dismiss is GRANTED.

25  **V.   <u>Qualified Immunity</u>**

26      The individual defendants assert that they are entitled to

27  qualified immunity to the extent they are sued in their personal

28  capacities.   Both parties offer analysis regarding the

application of the qualified immunity doctrine to the instant case.  However, as defendants indicate, it remains unclear whether plaintiff names the individual defendants in their official capacities, their personal capacities, or both.  The distinction is important.  Qualified immunity is only relevant if plaintiff brings suit against the individual defendants in their personal capacities.  Individual defendants sued in their official capacities are not entitled to qualified immunity.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  As such, the court defers ruling on the issue of qualified immunity until plaintiff has clarified the capacities under which the individual defendants are named.

Therefore, the court grants plaintiff leave to amend the complaint to clearly indicate the capacity in which the individual defendants are named.

**CONCLUSION**

For the foregoing reasons, defendants' motion is GRANTED IN PART and DENIED IN PART.  Defendants SBE and CDE's motion to dismiss is GRANTED with prejudice on the grounds that said defendants are entitled to Eleventh Amendment immunity for the claims asserted herein.  As to the individual defendants' motion, their motion is denied with respect to the issues addressed above.

Plaintiff is granted leave to amend to file a second amended complaint in accordance with the instant order.  Said complaint shall be filed and served within 20 days of the date of this

/////

/////

1  order.  Defendants shall have 30 days thereafter to file a

2  response thereto.

3       IT IS SO ORDERED.

4  DATED: August 11, 2006

5

6                              /s/ Frank C. Damrell Jr.
                               FRANK C. DAMRELL, Jr.
7                              UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28