UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CALIFORNIA PARENTS FOR THE EQUALIZATION OF EDUCATIONAL MATERIALS,<br><br>    Plaintiff,<br><br>    v.<br><br>THE CALIFORNIA DEPARTMENT OF EDUCATION, et al.,<br><br>    Defendants.<br>_____/ | NO. CIV. S-06-532 FCD KJM |

----oo0oo----

This matter is before the court on defendants'[1] motion for summary judgment of plaintiff California Parents for the Equalization of Educational Materials' ("CAPEEM") second amended

---

[1] Moving defendants are Kenneth Noonan, Ruth Bloom, Alan Bersin, Yvonne Chan, Donald G. Fisher, Ruth E. Green, Joe Nunez, Johnathan Williams, and David Lopez, in their official capacities as members of the California State Board of Education, and Tom Adams, in his official capacity as Director of the Curriculum Frameworks and Instructional Resources Division and Executive Director of the Curriculum Commission of the California State Department of Education.

1

complaint.  Defendants contend the action is precluded in its entirety by the doctrine of res judicata/collateral estoppel, as a result of a prior state court judgment on the same or similar causes of action and issues in a lawsuit brought by a party in privity with CAPEEM.  More specifically, defendants assert CAPEEM brings this action, alleging that the California State Board of Education ("SBE") violated the rights of its members during the 2005-2006 history-social science textbook adoption process and the adopted sixth-grade textbooks present Hinduism in a derogatory and unequal manner.  These very claims, defendants maintain, were fully adjudicated in a prior state court proceeding brought by the Hindu American Foundation ("HAF") and parents of California public school children who participated in the textbook adoption process ("the HAF plaintiffs").  Because the factual allegations and legal principles in CAPEEM's instant complaint are identical to those alleged in the HAF plaintiffs' state court action, defendants contend res judicata and collateral estoppel principles preclude relitigating the same claims and issues in this action.

 CAPEEM responds preclusion is not permitted here as the issues in this case (including, discrimination under the Equal Protection Clause and religious indoctrination and favoritism of some religions over others in textbooks in violation of the Establishment Clause) were not litigated in the HAF case, which involved a challenge to the textbook adoption process based on violations of the California Administrative Procedures Act ("APA") and state open meeting laws as well as a content challenge under California's Education Code and implementing

2

regulations.  Thus, CAPEEM asserts the primary right sought to be vindicated in this action by CAPEEM is not the same as the primary right that was at issue in the HAF case, nor are the legal and factual issues the same in the two actions.  Finally, CAPEEM asserts its action may not be precluded because it does not stand in privity with the HAF plaintiffs.

Res judicata and collateral estoppel preclude relitigating a claim or issue that was previously adjudicated in another proceeding between the same parties or parties in privity with them.  Here, there is no dispute that CAPEEM was not a party in the HAF action; thus, for res judicata or collateral estoppel to apply, CAPEEM must be found to be in privity with the HAF plaintiffs.

For the reasons set forth below, the court finds that CAPEEM is not in privity with the HAF plaintiffs, and thus, its preclusion inquiry ends there.  As the court cannot find privity, there is no need to discuss the other elements of the preclusion analysis.  Defendants' motion must be denied.[2]

---

[2] Because the court finds that oral argument will not be of material assistance, it orders this matter submitted on the briefs.  E.D. Cal. L.R. 78-230(h).

In their reply, defendants move to strike CAPEEM's opposition as untimely and in violation of the court's scheduling order, setting a page limit of 20 pages for opposition briefs.  The court acknowledges that CAPEEM's brief was filed three days late, pursuant to Local Rule 78-230(c), and that it exceeded the page limit by 3 pages; however, the court, in its discretion, does not strike the opposition since defendants make no showing of any actual prejudice to them.  Moreover, with respect to the page limit violation, CAPEEM filed an errata subsequent to the reply, submitting a brief in compliance with the court's page limit requirements (see Docket #s 89, 90).

# BACKGROUND[3]

In January 2005, the SBE initiated the process of adopting new sixth grade history-social science textbooks. (Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts ["UF"], filed Feb. 22, 2008 [Docket #84], ¶ 1.) As part of the sixth grade world history and ancient civilizations course, students are required to study the history and impact of various religions, including Hinduism. (UF ¶ 2.) In the textbook adoption process, SBE receives recommendations from the Curriculum Commission (the "Commission") regarding instructional materials, which it considers but is not obligated to follow. Cal. Educ. Code §§ 60203, 60204. In forming its recommendation concerning the sixth grade history-social science textbooks, the Commission received comments from representatives of Hindu groups, such as the Hindu Education Foundation ("HEF") and the Vedic Foundation ("VF"), as well as interested individuals. (UF ¶ 4.) Dr. Shiva Bajpai

---

[3] Unless otherwise noted, the facts set forth herein are undisputed (Docket #84). In some limited respects, in response to defendants' statement of undisputed facts, CAPEEM asserts an "objection," seeking relief under Fed. R. Civ. P. 56(f) to conduct further discovery on certain issues. Even as to these facts, however, CAPEEM does not dispute the central point as described by defendants in their statement. Accordingly, the court treats the subject fact as undisputed. Moreover, CAPEEM's "objection" under Rule 56(f) does not properly effectuate a motion for relief under the Rule, but the court need not reach the issue since the facts necessary for resolution of the motion are not disputed.
Additionally, the court notes that while CAPEEM did not file a statement of additional undisputed or disputed facts, it does proffer additional evidence in support of its opposition which was not addressed by defendants in their moving papers. Much of the evidence, apparently obtained during discovery, goes to the underlying merits of CAPEEM's claims, which are not addressed by this motion. (See e.g. Opp'n, filed Feb. 22, 2008 [Docket #80], at 4-8.) As such, the court does not cite herein to this evidence, and has not relied upon it in resolving the motion. Any objections made to this evidence by defendants are therefore moot.

acted as an expert for the Commission and reviewed the edits proposed by the Hindu groups. He recommended that the Commission approve most of them. (UF ¶ 5.)

Then, on November 8, 2005, the SBE received a letter from Dr. Michael Witzel, Professor of Sanskrit, Harvard University, signed by nearly 50 international scholars, urging the SBE to reject the edits proposed by "nationalist Hindus." The letter stated that such edits were of a religious-political nature, rather than a scholarly one and that the edits did not reflect the views of the majority of ancient Indian history specialists, or those of mainstream Hindus. (UF ¶ 6.) On November 9, 2005, the day after receiving these warnings, the SBE directed the Commission to review the textbook edits. (UF ¶ 7.) The California Department of Education ("CDE") staff contacted three additional content experts with expertise in ancient India: Dr. Stanley Wolpert, professor emeritus University of California Los Angeles, Dr. James Heitzman, University of California, Davis, and Dr. Witzel.[4] These experts reviewed the edits submitted by HEF and VF and provided their recommendations to the Commission. (UF ¶ 8.) On December 2, 2005, the Commission reviewed the proposed edits and content experts' recommendations and made its own recommendations to the SBE. Many of the Commission's recommended edits were in direct contrast and contrary to the recommendations received by Drs. Witzel, Heitzman, and Wolpert. (UF ¶ 9.) The SBE received a letter dated December 7, 2005,

---

[4] Witzel's participation in the process was a contentious affair; the Hindu groups objected to his appointment and argued, among other things, that professors Witzel, Wolpert and Heitzman had expressed antagonistic sentiments towards Indians, Hinduism, and the Hindu groups. (SAC ¶ 4.53.)

5

signed by an additional 130 scholars protesting the Commission's decision to reject the scholarly suggestions proposed by Drs. Heitzman, Wolpert, and Witzel.  (UF ¶ 10.)

On January 6, 2006, the SBE president called a closed-door meeting to discuss the textbook edits, at which Professors Bajpai and Witzel debated each line of the Hindu edits.  (UF ¶ 50.)  At a publically-noticed meeting on March 8, 2006, the SBE chose not to follow all of the Commission's recommendations when it adopted the final edits to the sixth grade history-social science textbooks.  (UF ¶ 11.)  CAPEEM asserts the final edits adopted by the CDE/SBE were in line with Witzel's recommendations, and failed to correct material errors with respect to their religion, culture and history, and generally treated Hindu culture in a derogatory manner.  (SAC ¶s 4.66, 4.69.)  The final edits, CAPEEM alleges, also presented Biblical events as fact, and accepted as true the narrative put forth by those groups advancing the Judeo-Christian agenda. (SAC ¶s 6.9, 6.10.)

CAPEEM filed the current action on March 14, 2006, less than a week after the textbooks' adoption.  CAPEEM is a non-profit corporation, formed to promote an accurate portrayal of the Hindu religion in California's public education system and the educational materials it uses.  CAPEEM is comprised of Hindu and Indian parents who have children currently attending public schools in the first through sixth grades in California (and will use the material approved and adopted by the SBE) and who assert their own interests as well as the interests of their children. CAPEEM's individual member-parents participated, together with other Hindu groups, in the sixth-grade history-social science

textbook adoption process.  (UF ¶ 42.)  CAPEEM filed the current, operative complaint, the second amended complaint, on August 25, 2006, alleging violations of the Equal Protection, Establishment, Free Speech, and Free Association Clauses of the Constitution under 42 U.S.C. § 1983.  (UF ¶ 12.)

On March 16, 2006, the Hindu American Foundation ("HAF"), Arjun Bhat, Yashwant Vaishnav, and Rita Patel filed a Petition for Writ of Mandate and Complaint for Injunctive and Declaratory Relief in the Superior Court of the State of California, County of Sacramento, Case Number 06CS00386.  (UF ¶ 13.)  HAF is a national, non-profit human rights group whose purpose is to provide a voice for the Hindu American Community and interact with and educate government, academia and the public at large about issues of concern to Hindus locally and globally.  (UF ¶ 14.)[5]  HAF plaintiffs Arjun Bhat, Yashwant Vaishnav, and Rita Patel are citizens and taxpayers of California and are parents of children in the California public school system.  (UF ¶ 15.)  The HAF plaintiffs alleged (1) procedural violations of California's APA, arguing the procedures through which defendants reviewed and approved the textbooks were not conducted under regulations formally promulgated under the state's APA, and California's Bagley-Keene Open Meeting Act, based on the SBE's failure to hold public meetings, and (2) content-based violations under California's Education Code, arguing the textbooks are not in compliance with the substantive, state legal standards applicable

---

[5]  The parties dispute whether HAF is a "membership" organization.  (Id.)  Defendants contend HAF's members include a substantial number of California residents.  (Id.)  CAPEEM maintains HAF is not a membership organization.  (Kumar Decl., filed Feb. 22, 2008.)

7

to their content. (UF ¶s 35-39.)

Generally stated, both cases challenge the adoption process and the textbook contents. (UF ¶s 17-34, 43-53.) For example, like the current action, the HAF plaintiffs challenged the following aspects of the textbooks' content: the portrayal of Hindu women's rights, the caste system, a polytheistic concept of the Divine, the Aryan Invasion Theory, and the portrayal of other religions more favorably than Hinduism. (UF ¶s 22, 45.) The HAF plaintiffs also alleged, like CAPEEM here, process grievances pertaining to the treatment of Hindu groups in the adoption process including the SBE's consultation with Drs. Witzel, Heitzman and Wolpert, and the use of various proceedings to determine appropriate textbook content. (UF ¶s 19-21, 43-44, 47-51.)

Prior to adjudication of the writ, on March 21, 2006, the HAF plaintiffs sought a temporary restraining order to enjoin the adoption of the challenged textbooks, which the state court denied. (UF ¶s 62, 68.) Subsequently, the court also denied the HAF plaintiffs a preliminary injunction. (UF ¶s 63-68.) On September 1, 2006, a hearing was held on the HAF plaintiffs' petition and complaint for writ of mandate. (UF ¶s 69, 70-87.) On September 15, 2006, the state court issued its order: (1) rejecting the HAF plaintiffs' content-based claims that the textbooks are substantively deficient and violate state law (specifically, the CDE's promulgated guidelines); and (2) granting the plaintiffs' procedural challenge on the ground the adoption process was flawed because the governing state regulations had not been properly promulgated under California's

APA.  (UF ¶s 88-100.)  The HAF plaintiffs appealed the decision, and on July 12, 2007, the appeal was dismissed pursuant to a stipulation between the parties.  (UF ¶s 102-103.)

**STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

"Summary judgment is an appropriate remedy when the doctrine of collateral estoppel refutes all triable issues of fact suggested by the pleadings and supporting documents." Kelly v. Vons Companies, Inc., 67 Cal. App. 4th 1329, 1335 (1998).

**ANALYSIS**

Defendants argue CAPEEM is precluded by the doctrine of res judicata and/or collateral estoppel[6] from bringing this action because it seeks to relitigate the same claims and issues which

---

[6] Although "collateral estoppel" is sometimes encompassed within the term "res judicata," the court uses the term "res judicata" herein to refer to claim preclusion and "collateral estoppel" to refer to issue preclusion.  See Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 897 n.3 (2002).

9

the HAF plaintiffs previously litigated in state court.[7]  Title 28 U.S.C. section 1738 requires federal courts to give the same preclusive effect to state court judgments as they would be given in the state in which they are rendered.  San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323 (2005).  Thus, to determine the preclusive effect of a state court judgment, federal courts look to state law.  Palomar Mobilehome Park Ass'n v. City of San Marcos, 989 F.2d 362, 364 (9th Cir. 1993).  Stated generally, res judicata and collateral estoppel preclude relitigating a claim or issue that was previously adjudicated in another proceeding between the same parties or parties in privity with them.  Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 895 (2002).

Thus, for the doctrines to be applicable at all the same parties or parties in privity with them must be involved in the two actions.  If that is not the case, whether the claims[8] or

---

[7] Hindu Am. Found. v. Cal. State Bd. of Educ., Sacramento County Superior Court, Case No. 06CS00386, Order and Decision ("HAF Order").  (Defs.' RJN, filed Feb. 2, 2008, Ex. D.)

[8] Under California law, an action is barred by res judicata if: (1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding, or parties in privity with them, were parties in the prior proceeding. Fed'n of Hillside & Canyon Assn's v. City of L.A., 126 Cal. App. 4th 1180, 1202 (2004). To determine whether the "same" cause of action is involved in the two actions, California's res judicata doctrine focuses on the "primary right" at stake: if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery. Mycogen Corp., 28 Cal. 4th at 904; Clark v. Yosemite Community College District, 785 F.2d 781, 784 (9th Cir. 1986).

10

issues[9] to be litigated are the same in the two proceedings is irrelevant.

The concept of privity for the purposes of res judicata/collateral estoppel refers to "a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights, [or] to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the [doctrines]." Rodgers v. Sargent Controls & Aerospace, 136 Cal. App. 4th 82, 90 (2006) (internal quotations and citations omitted).

The requirement of identity of parties or privity is a requirement of due process of law. Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Assn., 60 Cal. App. 4th 1053, 1069-70 (1998). Courts have therefore required that the non-party have an identity or community of interest with, and adequate representation by, the party in the first action. Id. at 1070. A party is considered "adequately represented" if his or her interests are "so similar to a party's interests that the latter was the former's virtual representative in the earlier action." Rodgers, 136 Cal. App. 4th at 91 (internal quotations and citations omitted). Courts measure the adequacy of

---

[9] Under California law, the doctrine of collateral estoppel precludes a party from relitigating an issue previously adjudicated if: (1) the issue is identical to that decided in a prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding; (4) the decision was final on the merits; and (5) preclusion is sought against a person who was a party or in privity with a party in the prior proceeding. Lucido v. Sup. Ct., 51 Cal. 3d 335, 341 (1990).

representation by inference, examining whether the party in the suit which is asserted to have a preclusive effect had the same interest as the party to be precluded, and whether that party had a strong motive to assert that interest.  Id.

The circumstances must also have been such that the non-party should reasonably have expected to be bound by the prior adjudication.  Id. at 92.  This requirement is satisfied if the "party to be estopped had a proprietary interest in and control of the prior action, or if the unsuccessful party in the first action might fairly be treated as acting in a representative capacity for the party to be estopped."  Id. (internal quotations and citations omitted).

Ultimately, however, the determination of whether a party is in privity with another for preclusion purposes is a "policy" decision, as there is no "universally applicable definition of privity."  Id. at 91 (internal quotations and citations omitted); Clemmer v. Hartford Insur. Co., 22 Cal. 3d 865, 875 (1978) (recognizing "privity is not susceptible of a neat definition, and determination of whether it exists is not a cut-and-dried exercise").  In deciding whether to apply preclusion principles, the court must balance the rights of the party to be estopped against the need for applying res judicata in the particular case, "in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation."  Martin v. County of L.A., 51 Cal. App. 4th 688, 701 (1996).

> In the final analysis, the determination of privity depends upon the *fairness* of binding [the non-party]

>     with the result obtained in the earlier proceedings
>     in which it did not participate. [The inquiry] . . .
>     requires close examination of the circumstances of each
>     case.

Rodgers, 136 Cal. App. 4th at 91 (internal quotations and citations omitted).

Here, CAPEEM had no involvement in the HAF case or ability to control or participate in it. (See generally Caplan Decl., filed Feb. 22, 2008 [Docket #81].) Counsel for the HAF plaintiffs, Deborah Caplan, attests in her declaration filed in support of CAPEEM's opposition that: (1) CAPEEM did not direct HAF to take any action in the HAF action; (2) HAF did not coordinate with CAPEEM or its counsel in any way during the pendency of the HAF lawsuit (HAF and CAPEEM prosecuted their respective lawsuits completely independent of each other); and (3) HAF did not provide CAPEEM or its counsel notice of the settlement reached in the HAF action prior to when it was finalized, nor did HAF provide CAPEEM with any information about the terms of the settlement during the settlement negotiations. (Caplan Decl., ¶ 5-8.) Defendants do not dispute these critical facts,[10] which demonstrate that the traditional notion of privity is clearly not met in this case. See Rodgers, 136 Cal. App. 4th at 92-93. There is no successor-in-interest relationship or proprietary relationship between the HAF plaintiffs and CAPEEM, nor did the parties have a relationship of any sort, let alone a

---

[10] In certain respects, defendants object to Ms. Caplan's declaration (see Docket #86), on the grounds of improper foundation and hearsay. Said objections are overruled. As counsel for the HAF plaintiffs in the HAF action, Ms. Caplan has personal knowledge of the subject facts and her testimony is not hearsay as she recounts *her own* version of the facts.

13

"close" relationship, sufficient to warrant a finding of privity, as CAPEEM had no involvement whatsoever in the HAF action. See Headwaters Inc. v. United States Forest Serv., 399 F.3d 1047, 1053, 1056 (9th Cir. 2005) (recognizing that a "close relationship" and "substantial participation" support a finding of privity)[11]; Rodgers, 136 Cal. App. 4th at 93 (finding no privity where the appellant "certainly had no control over or even impact upon the litigation that produced the decisions in favor of respondent").

Moreover, it is noteworthy that the HAF action was not brought as a class action. To argue in favor of a finding of privity, defendants cite to various cases wherein the first action involved a class action, some certified and some not, and the courts find a later action brought by a class member or non-class member barred. See e.g., Los Angeles Unified Sch. Dist. v. Los Angles Branch NAACP, 714 F.2d 935 (9th Cir. 1983); (Defs.'s Mem. of P&A, filed Feb. 2, 2008, at 13-14 [citing cases].) These cases are inapposite. Here, because the HAF action was not a class action, the superior court did not provide any safeguards to assure that all parties potentially affected by the judgment were adequately represented. See Headwaters, 399 F.3d at 1056 (emphasizing the importance of this distinction in a privity analysis). While defendants argue that the HAF plaintiffs and CAPEEM are the same "class of plaintiffs" in that they both represent "parents of California public school students who

---

[11] Headwaters involved application of the federal law on preclusion, not California law. However, on privity principles federal law is closely analogous, and the court finds Headwaters persuasive authority on the some of the issues addressed herein.

14

participated in the textbook adoption process and their non-profit advocates," such fact is not sufficient alone to demonstrate privity. (Defs.' Mem. of P&A at 13:22-23.) Defendants have not shown that any member of CAPEEM is a member of HAF, and CAPEEM asserts that this is impossible since HAF is not a member-based organization.

Since there is no overlap of membership between HAF and CAPEEM nor any other direct relationship between the two (as set forth above), to find privity in this case, the court must rely on the broader notions of privity, developed in more recent California case law, to determine whether the HAF plaintiffs were "virtual representatives" of CAPEEM in the HAF action. Important to that inquiry is whether the parties shared the same interests and whether the HAF plaintiffs had a "strong motive" to assert CAPEEM's interests. Rodgers, 136 Cal. App. 4th at 91. CAPEEM and defendants vigorously dispute whether the HAF plaintiffs and CAPEEM share the same interests. However, the court need not resolve that dispute because even assuming the interests are the same, based on attorney Caplan's declaration, the court cannot find that the HAF plaintiffs had a strong motive to assert CAPEEM's interests. Counsel declares that there was *no* coordination of efforts by her and *separate* counsel for CAPEEM. (Caplan Decl., ¶s 3, 6.) While it may have been that respective counsel for the HAF plaintiffs and CAPEEM were generally aware of the other simultaneously, pending action, the HAF plaintiffs and CAPEEM independently sought to vindicate their rights via

different fora and through different claims for relief.[12]  Under the factual circumstances of this case, the court cannot find motive on behalf of the HAF plaintiffs to represent the interests of CAPEEM.

Further supporting this court's finding are policy reasons for declining to preclude CAPEEM's action against defendants. First, preclusion in this case is not necessary to minimize inconsistent judgments.  The superior court found defendants failed to properly promulgate the rules, under the state's APA, pursuant to which the adoption process was conducted.  There would be nothing inconsistent with a finding from this court that defendants applied what procedures were in place in a disparate, inconsistent, and discriminatory manner.  Similarly, the superior court concluded the textbooks at issue there did not violate the state standards for content, as promulgated by defendants.  This court could find defendants violated the Establishment Clause without reaching a judgment that is inconsistent with that of the superior court; this court could find that the underlying standards themselves violate the Establishment Clause.  (See Mem. & Order, filed Aug. 11, 2006, denying defendants' motion to

---

[12]   The court must also remark that defendants in the HAF action were also represented by the state attorney general's office; inexplicably, despite that office's obvious knowledge of the resolution of the HAF action in September 2006, or at the latest July 2007, defendants continued to engage in discovery in this action and did not move for summary judgment on the basis of res judicata until February 2008.  Such delayed motions are looked upon with disfavor, and often courts find the defense waived based on a party's failure to assert the defense at the "earliest moment practicable."  See Home Depot, Inc. v. Guste, 773 F.2d 616, 620-21 n. 4 (5th Cir. 1985); Evans v. Syracuse City Sch. Dist., 704 F.2d 44 (2d Cir. 1983); Moriarty ex rel. Trustees of Local 727 I.B.T. Pension Trust v. Hills Funeral Home, 93 F. Supp. 2d 910, 920-22 (N.D. Ill. 2000).

16

dismiss and rejecting the argument that CAPEEM's Establishment Clause claim presents an issue of state law.)[13]  A violation of the Establishment Clause could also be premised on, excessive entanglement or favoring of one religious group over another in the process, regardless of the actual content of the textbooks at issue.

Additionally, preclusion is not necessary to protect against vexatious litigation or to minimize repetitive litigation.  There can be no charge here by defendants that CAPEEM seeks to raise specious claims in another forum.  Indeed, the superior court found in favor of the HAF plaintiffs on their state APA claim; arguably, this finding lends support to CAPEEM's claims in this case that defendants conducted the adoption process in a manner that was discriminatory.  There is similarly no valid charge that can be made of "repetitive" litigation; the claims at issue in the instant action derive from federal law and the HAF action involved distinct claims under state law.

Considering the factual circumstances of this case and the policy reasons for imposition of res judicata, the court finds that preclusion of CAPEEM's action against defendants is not warranted.  Because CAPEEM is not in privity with the HAF plaintiffs, defendants cannot use the HAF action to bar the instant proceedings.

---

[13]   The court ruled: "[Defendants] mischaracteriz[e] plaintiff's claim.  Plaintiff alleges defendants violated *federal* constitutional law by discriminating in the application of a state law.  Plaintiff is not asking the court to apply any California law against defendants."  (Id.)

**CONCLUSION**

For the foregoing reasons, the court DENIES defendants' motion for summary judgment on grounds of res judicata and/or collateral estoppel. The court cannot find that CAPEEM is in privity with the HAF plaintiffs, and thus, neither preclusion doctrine can be applied to bar the instant action.

On the unopposed motion of defendants, the court previously stayed all discovery, pending the outcome of this motion. (Mem. & Order, filed Jan. 23, 2008.) As contemplated by that order, because defendants' motion for summary judgment is denied, the court HEREBY reopens discovery, fact and expert. (Id. at 2:26-3:7.) The court's amended status (pretrial scheduling) order of December 27, 2006 (Docket #49), as modified by stipulation of the parties on August 22, 2007 (Docket #52), is further modified as follows:  The parties shall have until May 16, 2008 to complete fact discovery.  Expert designations shall be filed and served on or before June 6, 2008; rebuttal designations shall be filed and served on or before July 7, 2008; expert discovery shall close on July 31, 2008.  Due to these extensions of time, the dates presently set for the dispositive motion deadline, final pretrial conference and trial must be continued.  The dispositive motion deadline is reset to October 3, 2008.  The final pretrial conference is set for December 12, 2008 at 1:30 p.m.  The court trial shall commence on February 24, 2009 at 9:00 a.m.  All other provisions of the amended status (pretrial scheduling) order of

1 December 27, 2006 shall remain in effect.

2     IT IS SO ORDERED.

3 DATED: March 25, 2008

```
                                    FRANK C. DAMRELL, Jr.
                                    UNITED STATES DISTRICT JUDGE
```